**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MILLER, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 12-760 (MAS) (DEA) |
| CHRYSLER GROUP, LLC, | **OPINION** |
| Defendant. | |

**SHIPP, District Judge**

Before the Court is Defendant Chrysler Group, LLC's ("Defendant" or "New Chrysler") Amended Motion to Transfer Venue pursuant to 28 U.S.C. § 1412 (2012) to the United States District Court for the Southern District of New York. (Def.'s Moving Br., ECF No. 31.) Plaintiffs Jay Miller and Brooke Willman (collectively, "Plaintiffs") submitted Opposition to the Motion. (Pls.' Opp'n Br., ECF No. 34.) Defendant subsequently filed its Reply to Plaintiffs' Opposition. (Def.'s Reply, ECF No. 36.) The docket reflects that prior to the current motion, several previous motions filed with the Court were terminated by the Honorable Freda L. Wolfson. (ECF. No. 28.) Therefore, Defendant's Motion is the sole matter that must be addressed by the Court. For the reasons set forth below, the Court GRANTS Defendant's Motion to Transfer Venue to the United States District Court for the Southern District of New York.

I.   **FACTS AND PROCEDURAL HISTORY**

Plaintiffs filed their original complaint ("Complaint") on February 8, 2012. (ECF No. 1.) Plaintiffs filed their Amended Complaint ("Am. Compl.") on March 14, 2012. (ECF No. 14.) In the Amended Complaint, Plaintiffs, on behalf of a putative class, allege the existence of design defects in several models of Chrysler-brand vehicles that were manufactured, marketed, and distributed between 2006 and the present. (Am. Compl. at 1-2.) Specifically, Plaintiffs contend that design defects and faulty installation of their factory-installed sunroofs caused leakage and, as a result thereof, harmed Plaintiffs. *Id.* Plaintiffs assert a total of eleven claims based on alleged design flaws: (1) breach of contract; (2) breach of duty of good faith and fair dealing; (3) breach of express warranty; (4) breach of implied warranty; (5) breach of the Magnuson-Moss Act, 15 U.S.C. § 2301; (6) negligence; (7) negligent misrepresentation; (8) violation of the New Jersey Consumer Fraud Act ("NJCFA"); (9) unjust enrichment; (10) injunctive and equitable relief; and (11) declaratory judgment.[1] (Am. Compl. at 18-30.)

The root of Plaintiffs' allegations occurred prior to Defendant's legal existence. In fact, the question presented before the Court requires a brief review of the bankruptcy of the now defunct Old Carco, LLC (f/k/a, Chrysler, LLC) ("Old Carco" or "Old Chrysler"). On April 30, 2009, Old Chrysler and several of its subsidiaries filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York. *See In re Old Carco LLC*, Case No. 09-50002 (Bankr. S.D.N.Y.).[2] Defendant was incorporated on April 28, 2009. Following Old Carco's petition for bankruptcy, Defendant purchased several of Old Carco's assets in accordance with the June 1, 2009 Sale Order issued by the Bankruptcy Court. (*See*

---

[1] Plaintiffs' final two "claims" are actually prayers for relief and not causes of action.
[2] This Court takes judicial notice of the bankruptcy proceeding itself as well as a number of items in the Bankruptcy Court's docket. *See Beye v. Horizon Blue Cross Blue Shield of N.J.*, 568 F. Supp. 2d 556, 577 (D.N.J. 2008) (citations omitted).

2

*Declaration of Kathleen N. Fennelly*, Ex. 2 (the "Sale Order")) (ECF No. 17-3). The Sale Order specifically limited Defendant's liabilities, retaining only the agreed upon "Assumed Liabilities."[3] (Sale Order ¶ 35.) The Sale Order included a retention of jurisdiction provision through which the Bankruptcy Court reserved jurisdiction to "interpret, enforce and implement the terms and provisions of this Sale Order and the Purchase Agreement . . . [and] to adjudicate disputes related to this Sale Order or the Purchase Agreement . . . ." (Sale Order ¶ 43.)

According to Defendant, "the threshold issue" underlying its Motion to Transfer "is whether Chrysler Group assumed the liabilities for the claims Plaintiffs make, and the relief they seek, under the terms of [the] 'Sale Order.'" (Def.'s Moving Br. at 1.) Defendant argues that the Bankruptcy Court is the appropriate court to make this determination because it issued the Sale Order and retained jurisdiction to interpret the Sale Order. (Def.'s Moving Br. at 7-8.) Defendant argues that this case requires both application and interpretation of the Sale Order. (Rough, Uncertified Transcript of Oral Arguments ("Tr.") 3:17.) Plaintiffs, on the other hand,

---

[3] Specifically, Paragraph 19 of the Sale Order sets fourth that "[n]otwithstanding anything else contained herein or in the Purchase Agreement, in connection with the purchase of the Debtors' brands and related Purchased Assets, the Purchaser, from and after the Closing, will recognize, honor and pay liabilities under Lemon Laws for additional repairs, refunds, partial refunds (monetary damages) or replacement of a defective vehicle (including reasonable attorneys' fees, if any, required to be paid under such Lemon Laws and necessarily incurred in obtaining those remedies), and for any regulatory obligations under such Lemon Laws arising now, including but not limited to cases resolved prepetition or in the future, on vehicles manufactured by the Debtor in the five years prior to the Closing (without extending any statute of limitations provided under such Lemon Laws), but in any event not including punitive, exemplary, special, consequential, or multiple damages or penalties and not including any claims for personal injury or other consequential damages that may be asserted in relationship to such vehicles under the Lemon Laws. As used herein, "Lemon Law" means a federal or state statute, including, but not limited to, claims under the Magnuson-Moss Warranty Act based on or in conjunction with a state breach of warranty claim, requiring a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle to the warranty after a reasonable number of attempts as defined in the applicable statute."

argue that the case requires mere application of the Sale Order and therefore does not require transfer. (*Id.* 12:8-11.)

## II. DISCUSSION

The Plaintiffs raise a number of arguments in opposition to Defendant's motion to transfer. The Court will individually address a number of Plaintiffs' arguments below. The Court will then incorporate the remainder of Plaintiffs' arguments in its 28 U.S.C. § 1412 analysis.

Plaintiffs' arguments in opposition to the motion include: (1) in the wake of *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the limited nature of a bankruptcy court's jurisdiction counsels against transfer; (2) 28 U.S.C. § 1412 does not provide for the transfer of cases that are "related to" a bankruptcy proceeding; (3) their suit against Defendant should not be affected by the Old Carco bankruptcy and Sale Order because had the sale not occurred in the Bankruptcy Court there would be no question of successor liability; (4) the validity of the Sale Order is suspect because it purports to strip future claims; and (5) the Sale Order does not bar their claims because they did not receive adequate notice of the bankruptcy proceeding. The Court finds each of Plaintiffs' arguments unavailing.

As an initial matter, Plaintiffs argue that *Stern v. Marshall* counsels against transfer of this case due to the limited nature of Bankruptcy Courts' jurisdiction. (Pls.' Opp'n Br. at 13-14, 25-26 (ECF No. 34), Tr. at 17:10-16.)[4] However, Plaintiffs concede that *Stern* is "[n]ot on all

---

[4] The Court finds Plaintiffs' reliance on the supposed *vacatur* of the Sale Order unpersuasive. (Pls.' Opp'n Br. at 5-9.) Indeed, in *In re Chrysler, LLC*, 592 F.3d 370 (2d Cir. 2010), the Second Circuit vacated its earlier opinion that affirmed the validity of the Sale Order. However, nothing in that opinion, or in the Supreme Court's decision in *Indiana State Police Pension Trust, et al., v. Chrysler, LLC, et al.*, 130 S. Ct. 1015 (2009), suggests that the Sale Order is void. Moreover, the abundance of subsequent litigation regarding the terms of the Sale Order strongly supports the inference that the Sale Order remains valid and enforceable.

fours with this case." (Pls.' Opp'n Br. at 25.)  More appropriately phrased, "the *Stern* decision was a 'narrow' one holding only that, '[t]he Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that [was] not resolved in the process of ruling on a creditor's proof of claim.'" *Sheehan v. Dobin*, No. 10-6288, 2012 U.S. Dist. LEXIS 16128, at *8 (D.N.J. Feb. 9, 2012).  The Third Circuit has consistently recognized this maxim and it does not counsel against transfer because this case satisfies the "related to" jurisdiction type that requires a bankruptcy court to submit its findings to the relevant district court for review.  *See In re Resorts Int'l*, 372 F.3d 154, 161-62 (3d Cir. 2004).  Based on this straightforward application of circuit precedent, the Court is not persuaded by Plaintiffs' first argument.

Plaintiffs next argue that Defendant cannot move under 28 U.S.C. § 1412 because that section does not provide for the transfer of cases that are "related to" a bankruptcy proceeding. (Tr. 16:10-17:3.)  This assertion contradicts Circuit precedent.  In *Maritime Electric Co., Inc. v. United Jersey Bank*, No. 90-6057, 1992 U.S. App. LEXIS 5144, at *11-12 (3d Cir. Mar. 24, 1992), the Third Circuit found that § 1412 is the appropriate method for transfer of cases that are "related to" a bankruptcy proceeding.  *See also Abrams v. Gen. Nutrition Cos., Inc.*, No. 06-1820, 2006 U.S. Dist. LEXIS 68574, at *26 (D.N.J. Sept. 25, 2006) ("Although Section 1412 speaks only of proceedings 'under' the Bankruptcy Code, it is also applicable for determining whether a proceeding 'related to' a bankruptcy case may be transferred"), 1-4 *Collier on Bankruptcy* P 4.05[1] ("Section 1412 of title 28 applies to changes of venue both of (a) cases under title 11 and (b) civil proceedings arising under title 11, or arising in or related to cases under title 11"); 4.05[2] (The assertion that "section 1412 applies only to core proceedings . . . finds no support in the statute.")  Plaintiffs, citing *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.

5

1984), also argued that "related to" jurisdiction would not encompass this case because this case cannot "conceivably have some impact on the administration of the case in bankruptcy." (Tr. 19:14-15; *see also* Pls.' Opp'n Br. at 17-18 (arguing the same proposition).)

*Pacor* set forth the seminal test for "related to" cases that allows bankruptcy courts to hear a proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." 743 F.2d at 994. However, the Third Circuit set forth an alternative, more lenient standard for cases *after* the confirmation of a bankruptcy plan. In *In re Resorts International*, the Circuit explained that, "post-confirmation, the essential inquiry [is] whether there is a close nexus to the bankruptcy plan or proceeding." 372 F.3d at 166. "Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.* at 167. The Bankruptcy Court's docket makes it apparent that the central Old Chrysler litigation is post-confirmation. *In re Chrysler LLC*, 09-50002, S.D.N.Y., ECF No. 6875.[5] The Court agrees with Defendant's argument that the matter at hand requires both interpretation and application of the terms of the Sale Order. (*See* Tr. 3:13-4:11.) Having found that this case qualifies as "related to" under the post-confirmation standard, the Court must perform a § 1412 analysis. However, prior to engaging in this analysis, the Court will address the several remaining preliminary arguments of Plaintiffs.

---

[5] When questioned at oral argument regarding the distinction between "related to" cases pre-confirmation and post-confirmation, counsel for Plaintiffs stated, "We don't have a plan of reorganization . . . . What we have here was a liquidation under a Section 363(f) sale." (Tr. at 20:18-20.) The Court finds this distinction unpersuasive for several reasons: a) Plaintiffs' motion papers are silent on the pre-confirmation and post-confirmation distinction; b) Plaintiffs countered the distinction later on at oral argument by stating that a sale order and a post-confirmation situation are analogous, (Tr. at 22:18-22); and c) the Confirmed Bankruptcy Plan appears to incorporate the provisions of the Sale Order. *See, e.g.*, *In re Chrysler LLC*, 09-50002, S.D.N.Y., ECF No. 6783 at 15.

In addition to their arguments regarding the limited nature of a bankruptcy court's jurisdiction and the Court's authority to transfer pursuant to 28 U.S.C. § 1412, Plaintiffs argue that their suit should be free from the terms of the Sale Order because their "claims don't take their nature . . . from the fact that [Defendant] bought from Old Chrysler in bankruptcy" and that if "Old Chrysler . . . simply sold its assets to a new company . . . [their] claims would still exist." (Tr. 15:18-16:1.) Because the sale resulting in Defendant's liabilities took place in the context of a bankruptcy proceeding, it is inconsequential what may have occurred, and what liabilities may have been incurred, if the sale took place outside of the realm of bankruptcy. The Third Circuit, interpreting 11 U.S.C. § 363(f), held that it is within the authority of the bankruptcy courts to authorize the sale of property "free and clear of any interest in such property" including successor liability. *See In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003). It is therefore apparent that the Bankruptcy Court had the authority to order the sale with this limitation and Plaintiffs' argument to the contrary is not persuasive.

Plaintiffs cite *In re Grumman Olson Industries, Inc.*, 445 B.R. 243 (Bankr. S.D.N.Y. 2011), for the assertion that the Sale Order's "future claim stripping is highly suspect," especially in light of the Second Circuit's refusal to address the validity of "claim stripping" when aspects of the Chrysler litigation arose on appeal. (Tr. at 29:24, Pls'. Opp'n Br. at 1-2, 8.) This contention is intrinsically related to Plaintiffs' reliance on *Grumman*, as well as *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), for the proposition that the Sale Order does not bar their claims because they did not receive adequate notice of the proceedings. (Tr. at 30:12-31:8, Pls'. Opp'n Br. at 8, 9.)

In *Grumman*, the Second Circuit explained that the term "claim" under the Bankruptcy Code includes "two types of future tort claims." 445 B.R. at 251. "The first category includes

those who had pre-petition physical contact or exposure to the debtor's product but have not yet manifested symptoms or discovered their injury." *Id.* The *Grumman* Court further stated:

> Although [these] claimants . . . may not be identifiable during the bankruptcy case or aware of . . . the fact of their injury, courts have dealt with the due process concerns caused by the discharge of their claims through the appointment of a future claims representative to protect their interests and the creation of a trust to pay their claims.

*Id. See also Wright v. Owens Corning*, 679 F.3d 101, 108 n.7 (3d Cir. 2012) (recognizing that some courts appoint future claims representatives to receive notice and represent the interests of unknown creditors). Individuals who cannot be identified and lack pre-bankruptcy contact or dealings with the debtor are included in "[t]he second category . . . [which] consists of victims who are injured after consummation of an asset sale or confirmation of a plan as a result of a defective product manufactured and sold by the debtor prior to the bankruptcy." *Grumman*, 445 B.R. at 251.

The Third Circuit recently adopted an even more expansive definition of the term "claim" and held that "a claim arises [under the Bankruptcy Code] when an individual is exposed *pre-confirmation* to a product or other conduct giving rise to an injury that underlies a 'right to payment' under the Code." *Wright*, 679 F.3d at 107 (emphasis in original). However, the Third Circuit "express[ed] no opinion on the broader issue of . . . whether discharging unknown future claims [through the appointment of a future claims representative] comports with due process." *Id.* at 108 n.7.

This Court certainly recognizes "the harsh realities of barring claims held by persons who may not reasonably have been aware of their claims on or before the bar date." *Castleman v. Liquidating Tr.*, No. 06-1077, 2007 U.S. Dist. LEXIS 64047, at *29 (N.D.N.Y. Aug. 28, 2007). However, courts have responded to this reality by appointing "a future claims representative . . .

to act as a guardian for the unknown future claimants." *Id.* at *29-30. "These representatives are appointed, in part, to address the broader issue of whether discharging unknown future claims comports with due process." *Wright*, 679 F.3d at 108 n.7. The adequacy of this representation "depends on the circumstances of a particular case," *id.*, and "is best determined by the appropriate bankruptcy court or the district court." *In re Grossman's Inc.*, 607 F.3d 114, 127 (3d Cir. 2010).

In their Amended Complaint, Plaintiffs do not specify the exact dates they purchased the vehicles at issue. The Amended Complaint lists Plaintiff Miller as owning a 2008 Jeep Patriot and Plaintiff Willman as purchasing her 2007 Jeep Commander in April 2010. (First Am. Compl. ¶¶ 14, 16.) The proposed Second Amended Complaint specifies that Miller bought his car in April 2008. (ECF No. 37-2 Ex. B ¶ 14.) The Bankruptcy Court confirmed the Second Amended Joint Plan of Liquidation of Debtors and Debtors in Possession on April 23, 2010. *In re Chrysler LLC*, 09-50002, S.D.N.Y., ECF No. 6875. Application of *Wright* to these facts qualifies Miller's pre-petition contact with Old Carco as a "claim." The factual pleadings regarding Willman's claim leave it unclear whether she purchased her car before or after the April 23, 2010 confirmation date.

Here, Defendant asserts that a committee represented Plaintiffs' claims, as well as those similarly situated, during the initial Old Chrysler bankruptcy litigation and that this committee ensured that some rights were preserved through Paragraph 19 of the Sale Order. (Tr. at 36:14-17.) The Bankruptcy Court's docket reflects that this was the case. *In re Chrysler LLC*, 09-50002, S.D.N.Y., ECF No. 2923. Notably, "[w]hether a particular claim has been discharged by a plan of reorganization depends on factors applicable to the particular case and is best determined by the appropriate bankruptcy court or the district court." *In re Grossman's Inc.*, 607

F.3d at 127. Having found that this suit is "related to" the Old Carco bankruptcy proceeding in the Southern District of New York, the Court next analyzes whether transfer to the Southern District of New York is appropriate.

As stated above, 28 U.S.C. § 1412 is the appropriate vehicle in the Third Circuit for transfer of cases that are "related to" a bankruptcy proceeding. Under § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Although this section is distinct from 28 U.S.C. § 1404 because of its disjunctive nature and § 1404's requirement that "the transferee court be one in which the action might have originally been brought," "[t]he criteria guiding a court's transfer analysis pursuant to § 1412 includes largely the same criteria for transfer of cases pursuant to § 1404." *U.S. Vision, Inc. v. AS IP Holdings, Inc.*, No. 11-1892, 2012 U.S. Dist. LEXIS 8694, at *8-10 (D.N.J. Jan. 25, 2012) (citing *In re Emerson Radio Corp.*, 52 F.3d 50, 55 (3d Cir. 1995)). "The movant bears the burden under § 1412 . . . of demonstrating that transfer is warranted. However, the final decision regarding transfer is committed to the district court's discretion." *Abrams*, 2006 U.S. Dist. LEXIS 68574, at *28 (internal citations omitted).

Defendant brought its Motion under § 1412's "interest of justice" prong. (Def.'s Moving Br. at 14.) Courts assaying the appropriateness of a § 1412 Motion to Transfer take note that the interest of justice prong is both broad and flexible and generally discuss seven or twelve factors. *Compare Abrams*, 2006 U.S. Dist. LEXIS 68574, at *29 and *Tatum v. Chrysler Grp., LLC*, No. 10-4269, 2011 U.S. Dist. LEXIS 144831, at *4-5  (D.N.J. Dec. 16, 2011).  Here, the Parties proffer their positions under the seven factor analysis. (Def.'s Moving Br. at 14; Pls.' Opp'n Br. at 21-27.)

10

In deciding whether transfer is appropriate in the present case, the Court will analyze the following seven non-exhaustive factors: "(1) the economics of estate administration; (2) a presumption in favor of the home court; (3) judicial efficiency; (4) the ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders; (6) the enforceability of any judgment; and (7) plaintiff's choice of forum." *Tatum*, 2011 U.S. Dist. LEXIS 144831, at *5.

As to the first factor, Plaintiffs contend that their claims will "have no effect on the administration of the estate of Old Chrysler because Plaintiffs have not even sued Old Chrysler." (Pls.' Opp'n Br. at 21.) They note that, "[a]s a practical matter, Old Chrysler is defunct, the bankruptcy case long cold, and the presiding judge retired." (*Id.*) However, as discussed above, Plaintiffs raised several arguments regarding the alleged *vacatur* of the Sale Order and supposed Due Process violations during the initial bankruptcy proceeding. The Court does not find Plaintiffs' arguments persuasive because they appear logically inconsistent. While Plaintiffs' arguments are not persuasive, Defendant did not include an analysis of this factor in its moving brief. The Court therefore finds that this first factor does not weigh in favor of either party.

The second factor considered under § 1412 is a presumption in favor of the "home court" that is applied on case-by-case basis. *See Res. Club, Ltd. v. Designer License Holding Co., LLC*, No. 10-412, 2010 U.S. Dist. LEXIS 50280, at *10 (D.N.J. May 21, 2010). Plaintiffs attempt to withstand the presumption in favor of the "home court" by asserting that this presumption only favors the Defendant, that their "claims are not bankruptcy claims," and that Defendant's Motion is purely tactical. (Pls.' Opp'n Br. at 22-23.) The Court explained above why these claims are "related to" the bankruptcy proceeding. Irrespective of the potentially "tactical" nature of Defendant's Motion, the "home court" prong refers to the court "where the bankruptcy case was

11

commenced," *i.e.*, the Southern District of New York. *See George Junior Republic v. Williams*, No. 07-4537, 2008 U.S. Dist. LEXIS 22682, at *15 (E.D. Pa. Mar. 19, 2008) (quoting *Stamm v. Rapco Foam, Inc.*, 21 B.R. 715, 725 (Bankr. W.D. Pa. 1982)). A consideration of the second factor strongly weighs in favor of transfer.

Defendant argues that transfer to the Southern District would promote judicial efficiency, the third § 1412 factor, by eliminating the risk of inconsistent interpretations of the Sale Order. (Def.'s Moving Br. at 16.) Defendant bolsters this argument by referencing the Retention of Jurisdiction Provision that appears in the Sale Order. (*Id.*) Plaintiffs counter these arguments by asserting that the transfer to the Southern District, the ensuing referral of the case to the Bankruptcy Court, and the transfer of remaining issues back to this Court would prove inefficient because of the numerous courts involved. (Pls.' Opp'n Br. at 23.) At oral argument, Plaintiffs also suggested that transfer would be judicially inefficient because bankruptcy courts may not enter final decisions in cases that are "related to" a bankruptcy proceeding. (Tr. 23-24.)

The Court finds that transfer of this case to the district where Old Carco's bankruptcy case is ongoing would promote judicial efficiency by establishing one forum where all claims arising from the sale of Old Carco's estate can be addressed. Additionally, transfer will avoid the risk of "inconsistent rulings" relating to interpretation and application of the Sale Order. *See Thomason Auto Grp., LLC, v. Ferla*, 08-4143, 2009 U.S. Dist. LEXIS 98806, at *20 (D.N.J. Oct. 23, 2009). Though the Southern District of New York will ultimately exercise its discretion in transferring the case to the Bankruptcy Court of that district, "courts routinely refer most bankruptcy cases to the bankruptcy court." *In re Resorts Int'l*, 372 F.3d at 162. The Court is not persuaded by Plaintiffs' contention that a commonplace judicial procedure hampers efficiency.

Similarly, the Court is not persuaded by Plaintiffs' contention that the statutorily established procedure of bankruptcy courts issuing recommendations and district courts entering final orders is inefficient. *See* 28 U.S.C. § 157(c)(1) ("In [a 'related to'] proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge . . . ."). Additionally, while bankruptcy courts may not "write their own jurisdictional ticket" it is well established that "courts will give effect to retention-of-jurisdiction provisions . . . if there is bankruptcy court jurisdiction." *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 256 (3d Cir. 2007) (internal citations omitted). In light of the foregoing, the Court finds Defendant's argument persuasive because transfer of this case will promote, rather than impede, judicial efficiency. As such, the Court finds that a consideration of this factor favors transfer.

The fourth factor under § 1412 concerns the ability of the non-moving party to receive a fair trial in the proposed court. In support of its Motion, Defendant argues that transfer to the Southern District of New York will not impede the Plaintiffs' ability to receive a fair trial because Defendant will not oppose a transfer back to this Court if Plaintiffs' claims survive the preliminary determination. (Def.'s Moving Br. at 16-17.) Plaintiffs contend that the involvement of a federal court outside of New Jersey impairs their ability to receive a fair trial because this Court regularly interprets New Jersey law and is in the best position to provide a full and fair trial. (Pls.' Opp'n Br. at 24-25, Tr. at 27-28.) However "[t]he familiarity of the trial judge with applicable law . . . does not weigh heavily for or against transfer, as district courts often interpret and apply state law and this case does not involve any novel or difficult application of state law." *Abrams*, 2006 U.S. Dist. LEXIS 68574, at *31-32. Additionally, Plaintiffs argue that the unavailability of a jury at the bankruptcy court weighs in their favor.

(Tr. at 27-28.) However, "even when a district court must ultimately preside over a trial by jury, there is no reason why the Bankruptcy Court may not preside over an adversary proceeding and adjudicate [preliminary matters] until such time as the case is ready for trial." *Thomason*, 2009 U.S. Dist. LEXIS 98806, at *18 (internal citations omitted). The Court finds Defendant's argument persuasive for this factor because Plaintiffs' ability to receive a fair trial will not be compromised by transfer to the Southern District of New York for interpretation and application of the Sale Order.

Next, § 1412 requires that the Court consider the local interest in the controversy. Defendant argues that New Jersey's interest in this case "is no greater than that of any other state because . . . this case [is] a nationwide class action, and one of the two named plaintiffs purports to reside in the state of California." (Def.'s Moving Br. at 17.) In contrast, Plaintiffs highlight the one named plaintiff's residence and purchase of his automobile in New Jersey and assert that "New Jersey has a strong interest in local controversies decided by courts familiar with New Jersey laws" and that "[a] New Jersey court applying the NJCFA, is in the best position to decide whether the NJCFA is Lemon Law type claim." (Pls.' Opp'n Br. at 25.)

In *Abrams*, the court found it significant that "[t]he claims underlying [the] action did not arise exclusively in New Jersey." 2006 U.S. Dist. LEXIS 68574, at *31. Moreover, the analysis necessitated by this preliminary matter requires the scrutiny of the Sale Order and there is no indication that the New York courts could not adequately analyze the NJCFA. As Plaintiffs' brief notes, "[f]ederal courts routinely review orders, precedents, *other state laws*, and other countries' laws." (Pls.' Opp'n Br. at 28 (citing *Busi. Store, Inc., v. Mail Boxes, Etc.*, 2012 WL 525966, at *4 (D.N.J. Feb. 16, 2012) (emphasis added).) Accordingly, "it is proper and indeed preferable that the Bankruptcy Court resolve whether the rights of the parties implicated in this

14

case are subject to the terms of the [Sale] Order." *U.S. Vision*, 2012 U.S. Dist. LEXIS 8694, at *17. In full consideration of the Parties' arguments, the Court finds that this factor weighs neutrally and cannot be said to lean its support towards providing New Jersey with an interest sufficiently superior for the controversy to be decided within its borders. *See Toth v. Bodyonics, Ltd.*, No. 06-1617, 2007 U.S. Dist. LEXIS 18278, at *10 (E.D. Pa. Mar. 15, 2007).

    The next factor relevant to § 1412 is the enforceability of a judgment rendered by the alternate venue. According to Defendant, there is no question regarding enforceability of any decision rendered by the Southern District of New York or its Bankruptcy Court since any remaining claims will be returned to this Court, whose judgments are unquestionably enforceable. (Def.'s Mov. Br. at 17.) Plaintiffs, however, re-allege their argument that, as a result of *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the jurisdiction of the bankruptcy court is suspect and any decision issued by that court "would be subject to serious challenge." (Pls.' Opp'n Br. at 26, Tr. 28:15-31:13.) The Court already explained above why it is not persuaded by this argument. Plaintiffs additionally bring forth concerns regarding their Due Process rights as implicated by the original bankruptcy proceeding and the Sale Order. (Pls.' Opp'n Br. at 26, Tr. 28:15-31:13.) Also as discussed above, the Court finds that either the Southern District of New York or its bankruptcy court would be a more appropriate court to address these Due Process concerns. Accordingly, the Court does not foresee any issues with the enforceability of a judgment following a transfer.

    Finally, Defendant argues that Plaintiffs' choice of forum, which is present in all cases, cannot defeat Defendant's Motion because "all the other factors favor transfer" and there is a substantial need for interpretation of the Sale Order. (Def.'s Mov. Br. at 17-19.) In opposition, Plaintiffs highlight the deference afforded to plaintiffs' choices, especially when "the transfer

question is close." (Pls.' Opp'n Br. at 26-27.) The Court finds this factor weighs against transfer. However, after review and careful consideration of all of the § 1412 factors the Court finds that the factors weigh strongly in favor of transfer.

### III. CONCLUSION

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendant's Motion is GRANTED. An order consistent with this opinion will be entered.

                                                                   s/ Michael A. Shipp
                                                        **MICHAEL A. SHIPP**
                                                        **UNITED STATES DISTRICT JUDGE**

Dated: December 7, 2012